UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, } | |
| } | |
| v. } | Case No.: 2:17-CR-539-RDP-SGC |
| } | |
| CHARLES EDWARD WALKER, JR., } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION AND ORDER**

This case is before the court on Defendant Charles Edward Walker, Jr.'s (1) Motion Requesting Release (Doc. # 75), (2) Motion Requesting Compassionate Release (Doc. # 78), (3) Supplemental Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(C)(1)(A) (Doc. # 79), (4) an Emergency Motion for Compassionate Release Under 18 U.S.C. § 3582(C)(1)(A) (Doc. # 81), and Motion for Appointment of Counsel (Doc. # 82). For the reasons set forth below, the Motions are due to be denied.

The court notes that Walker's first two motions were filed by his counsel, Susan James. (Docs. # 75 and 78). However, on July 20, 2020, Walker filed what appears to be a letter (unsigned) to Ms. James terminating her services. (Doc. # 80). Walker's next three filings were filed *pro se*, including his motion to appoint other counsel. (Docs # 79, 81 and 82).

**I.     Background**

On February 22, 2018, Walker pleaded guilty to conspiracy to possess with the intent to distribute heroin and cocaine base. (Docs. # 25, 26, 69). At that time, Walker had two prior felony drug convictions. (Doc. # 26 at 2). On May 16, 2019, Walker was sentenced to be imprisoned for a term of eighty-seven (87) months. (Doc. # 69 at 2). His report date was June 6, 2019. (*Id.*).

Therefore, Walker has served approximately fifteen months of the 87-month sentence, *i.e.*, less than twenty percent of the sentence. The Bureau of Prisons reports that Walker is 49 years old, and has an anticipated release date of August 6, 2025.[1] Walker is incarcerated in the low-security facility at the Federal Correctional Institution at Forrest City, Arkansas (Forrest City Low FCI), a facility that has experienced an outbreak of COVID-19 cases. As of September 2, 2020, BOP reports that Forrest City Low had four inmates and six staff with active COVID-19 cases. That facility houses 1,632 inmates. There are 661 inmates who have recovered from COVID-19.[2]

According to Walker, he has several underlying medical conditions, including PTSD, high blood pressure, sleep apnea, anemia, and an irregular heartbeat. Walker tested positive for COVID-19 five months ago on April 1, 2020. (Doc. # 79). He appears to have requested that the BOP seek compassionate relief on his behalf on July 1 and/or July 11, 2020. (Doc. # 81 at 3, 10; see also Doc. # 79-1 at 2).

**II.    Legal Standard**

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). The exception in 18 U.S.C. § 3582(c)(1)(A) provides that, when a defendant has exhausted his or her administrative remedies, the court may exercise its discretion to reduce the term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if 1) extraordinary and compelling reasons warrant such a reduction and 2) such a reduction is consistent with applicable policy statements. *United States v. Smith*, 2020 WL 2512883, at *2

---

[1] The Federal Bureau of Prison's website provides information about an inmate's projected release date. The following is a link to the inmate locator section of the website: https://www.bop.gov/inmateloc/.

[2] *See* https://www.bop.gov/coronavirus/.

(M.D. Fla. May 15, 2020). "The defendant generally bears the burden of establishing that compassionate release is warranted." *Id.* (citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013)).

## III.  Analysis

Walker argues that the spread of COVID-19, in combination with his underlying medical conditions, presents an extraordinary and compelling reason justifying his release. (Doc. # 79).

Compassionate-release motions arise under 18 U.S.C. § 3582(c)(1)(A)(i), which states:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

### A.   Administrative Exhaustion Requirement

A district court is not free to modify a term of imprisonment once it has been imposed, except in two circumstances: upon motion of the Director of the BOP; or upon motion by a defendant, after he has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on his behalf, or 30 days has elapsed from receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Celedon*, 353 F.App'x 278, 280 (11th Cir. 2009).

After reviewing the applicable law and facts presented here, the court finds that Walker appears to have satisfied the compassionate release statute's 30-day exhaustion requirement. He filed his latest Motion on August 20, 2020. (Doc. # 81). More than 30 days have lapsed since

3

Walker made his July 11, 2020 request to the warden to file a motion for compassionate release due to COVID-19 on his behalf, apparently without a response from the warden. (Doc. # 81 at 3, 10). As such, Walker has satisfied the compassionate release statute's 30-day exhaustion requirement.

      **B.**     **Section 3553(a) Factors and Extraordinary and Compelling Reasons**

Although Walker has demonstrated that he satisfied the statute's exhaustion requirement, the question still remains whether, "considering the factors set forth in [§] 3553(a)," "extraordinary and compelling reasons warrant" a reduction in his sentence, "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

United States Sentencing Guideline § 1B1.13 is the applicable policy statement related to compassionate release. That section, which was adopted before Congress authorized a defendant to seek relief under § 3582(c) on his own behalf, essentially reiterates the requirements of § 3582(c)(1)(A), with the additional requirement that a defendant "not be a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). The application notes to § 1B1.13 provide examples of extraordinary and compelling reasons to grant a compassionate release. In particular, Application Note 1 states:

> Provided the defendant [is not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant --
>
>     (i) The defendant is suffering from a terminal illness[.]
>
>     (ii) The defendant is [suffering from a health condition] that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant -- The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the

4

>aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>(C) Family Circumstances --
>
>>(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>>(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>(D) Other reasons -- As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Application Note 1. As noted, the basis for compassionate release must be "consistent with" this policy statement. 18 U.S.C. § 3582(c)(1)(A)(i).

Here, Walker fails to demonstrate extraordinary and compelling reasons to reduce his sentence. According to Walker, he has PTSD, high blood pressure, sleep apnea, anemia, and an irregular heartbeat. (Doc. # 81 at 7). Around the time he contracted COVID-19, he developed pneumonia and bronchitis. (*Id.* at 8). He states that he "fear[s] losing [his] life, if a second extensive wave of this virus comes back through this facility because [he is] still not back where [he] was with [his] health." (*Id.*).

Application Note 1(A)(ii) applies to conditions from which an inmate "is not expected to recover," and there is no record evidence supporting that requirement. On the contrary, the latest medical records submitted by Walker from a May 15, 2020 visit to the infirmary (approximately 45 days after he contracted the COVID-19 virus), indicate that his chief complaint was hypertension because he was running low on his blood pressure medicine. (Doc. # 79-1 at 3). At that time, the nurse noted that he "Appears Well." (*Id.*). As such, Walker has failed to show that he is unable to provide self-care within the environment of a correctional facility for his medical

5

conditions or that his medical conditions are ones from which he is not expected to recover. *See* U.S.S.G. § 1B1.13, Application Note 1(A)(i)-(ii).

Moreover, a month and one-half after Walker's positive COVID-19 test, his only complaint was related to running low on this blood pressure medications, and he appeared "well" to the nurse. (Doc. # 79-1 at 3). Walker has provided no evidence that he has suffered from severe illness due to the comorbidity of his medical conditions and COVID-19, or that he has suffered from any long-term effects of COVID-19, and more than 60 days have passed since he tested positive for the virus. While it is certainly unfortunate that Walker is among those federal inmates who contracted COVID-19, the court cannot say, on this record, that he is at higher risk or would otherwise be better off were he released from incarceration now. Thus, Walker's condition does not present "extraordinary and compelling reasons warrant[ing a sentence] reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

Even if extraordinary and compelling reasons existed, guideline § 1B1.13 and the § 3553(a) factors weigh against compassionate release in Walker's case. To begin, § 1B1.13(2) – which § 3582(c) incorporates – states that a sentence may be reduced only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Walker argues that he is a non-violent offender, he was successful on bond after arrest until his incarceration, he has a clean disciplinary record during incarceration, he has taken fifteen classes while in prison, and he is eligible for federal prison camp level of security. (Doc. # 79). However, the relevant factors and guidelines weigh against compassionate release in this case.

Starting with recidivism, the Pre-Sentence Investigation Report ("PSR") indicates that Walker had two prior felony drug convictions when he committed the offense for which he is currently imprisoned, in addition to other convictions for other crimes. In 1999, at age 28, Walker

was originally charged with Trafficking Cocaine, but pled to the lesser charge of Unlawful Possession of Controlled Substance. In 2008, Walker was charged with possession of marijuana and cocaine, and dog fighting. In 2009, at age 38, Walker was again charged with Trafficking Cocaine, but pled to the lesser charge of Unlawful Distribution of Controlled Substance. In 2016, he was charged with Trafficking Morphine in state court. That offense conduct was related to the conduct for which he is currently incarcerated. (Doc. # 67). This criminal history indicates that there is a risk of recidivism.

As to whether the offense was non-violent, § 1B1.13(2) incorporates by reference 18 U.S.C. § 3142(g), which provides factors to determine whether a person is a "danger to the safety of any other person or the community." Among those factors is whether the defendant possessed a firearm; whether the offense involved a controlled substance; and whether, at the time of the current offense, the person was on probation, parole, or other release pending completion of a sentence. 18 U.S.C. § 3142(g). Walker's offense involved significant amounts of a controlled substance (approximately one kilogram of heroin). Therefore, Walker poses a danger to the community.[3]

Finally, Walker has served less than half of his 87-month term of incarceration. In contrast to cases in which courts have granted compassionate release during the COVID-19 pandemic, Walker has served only a fraction of his sentence to date. To reduce Walker's sentence as requested would diminish his transgressions and undermine the goals of the original sentence, among them, the need to dispense adequate punishment for defendant's multiple acts throughout his criminal career and to deter others from emulating his behavior.

---

[3] Some courts have concluded that the term "safety of the community" refers "not only to the mere danger of physical violence but also to the danger that the defendant might engage in criminal activity to the community's detriment." *United States v. Mackie*, 876 F. Supp. 1489, 1491 (E.D. La. 1994) (reviewing same phrase in 18 U.S.C. § 3148, which, like 1B1.13 incorporates § 3142(g)). That is certainly the case with drug crimes.

**IV.     Conclusion**

Having considered all of the materials submitted to the court, it is **ORDERED** as follows:

1. Walker's Motion Requesting Release (Doc. # 75) is **DENIED**;

2. Walker's Motion Requesting Compassionate Release (Doc. # 78) is **DENIED**;

3. Walker's Supplemental Motion for Compassionate Release pursuant to 18 U.S.C. 3582(C)(1)(A) (Doc. # 79) is **DENIED**;

4. Walker's Emergency Motion for Compassionate Release Under 18 U.S.C. 3582(C)(1)(A) (Doc. # 81) is **DENIED**; and

5. Walker's Motion for Appointment of Counsel (Doc. # 82) is **DENIED**.

The Clerk of the Court is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to Charles Edward Walker, Jr., 35470-001, Forrest City Low Federal Correctional Institution, Inmate Mail/Parcels, P.O. BOX 9000, Forrest City, AR 72336.

**DONE** and **ORDERED** this September 3, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE